IN UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
Civil No. _____

**FILED**

MAY 2 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

John William Parker
39744 400th Avenue
Waubun, MN 56589
(218) 734-2497

Todd Allen Bellanger
224 Loop
White Earth, MN 56591
(218) 983-4172

Melvin Manypenny
White Earth, MN 56591
(218) 983-3160

individually; and as
Enrollees of the White
Earth Band of Chippewa
Indians;

      vs.

Gale A. Norton,
Secretary of Interior of the United States
1849 C Street, NW
Washington, D.C. 20240

W. Patrick Ragsdale, Director of the
Bureau of Indian Affairs
1849 C Street, NW
Washington, D.C. 20240

Larry Morrin
Acting Area Director, Bureau
of Indian Affairs, Minneapolis
Area Office
331 South Second Avenue
Minneapolis, MN 55401

CASE NUMBER 1:05CV01070

JUDGE: Ellen Segal Huvelle

DECK TYPE: Pro se General Civil

DATE STAMP: 05/27/2005

**COMPLAINT SEEKING RELIEF
IN FORM OF MANDAMUS
PURSUANT TO 28 U.S.C. Sec. 1361**

**RECEIVED**

APR 1 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Alberto Gonzalez
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
(202) 353-1555
Washington, D.C. 20530-0001

To: Defendants above named.

Plaintiffs hereby assert for their claim against Defendants as follows:

## I. PARTIES

Plaintiffs:

1. John William Parker, of rural Waubun, Minnesota is a
resident of the White Earth Indian Reservation, and an enrollee of the
White Earth Band of Chippewa Indians and the Minnesota Chippewa
Tribe.

2. Todd Allen Bellanger of White Earth, Minnesota, is a
resident of the White Earth Indian Reservation, and an enrollee of the
White Earth Band of Chippewa Indians and the Minnesota Chippewa
Tribe.

3. Melvin Manypenny of White Earth, Minnesota
is a resident of the White Earth Indian Reservation, and an enrollee
of the White Earth Band of Chippewa Indians and the Minnesota
Chippewa Tribe.

Defendants:

4. Gale A. Norton is the Secretary of the Interior
of the United States, charged with the responsibility of carrying

out the "trust responsibility" which exists by statutory and common law to protect the rights of the plaintiffs, and is charged with the responsibility of enforcing the Revised Constitution and By-laws of the Minnesota Chippewa Tribe pursuant to Article XV ("Manner of Review") of the said constitution.  Alberto Gonzalez is Attorney General of the United States entitled and required to receive a copy of this action.

5.  W. Patrick Ragsdale is the Director of the Bureau of Indian Affairs, and responsible for carrying out the trust responsibility and enforcement of the Revised Constitution and By-laws of the Minnesota Chippewa Tribe, the organic document governing the White Earth Band of Chippewa Indians.

6. Larry Morrin is the Acting Area Director, Minneapolis Area Office, Bureau of Indian Affairs, charged with the responsibility of carrying out the trust responsibility and enforcement of the Revised Constitution and By-laws of the Minnesota Chippewa Tribe, the organic document governing the White Earth Band of Chippewa Indians, Minnesota.

## II. JURISDICTION

1.  The Court has jurisdiction of this action pursuant to 28 U.S.C. Section 1331 as a "federal question" is involved regarding the trust responsibility and responsibility to enforce the Revised Constitution and By-laws of the Minnesota Chippewa Tribe.  The federal Court for the District of Columbia has jurisdiction as the primary

Headquarters of the Bureau of Indian Affairs is in Washington, D.C.

2.  Further jurisdictional basis is premised on 28 U.S.C. Section 1361, which allows actions in the nature of Mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiffs; plaintiffs also have individual constitutional rights as recognized by the Indian Civil Rights Act, 25 U.S.C. Secs. 1301 *et seq.* as well as under Article XIII of the Revised Constitution and By-laws of the Minnesota Chippewa Tribe.

3.  Plaintiffs have exhausted their administrative remedies, or the administrative remedies would be inadequate to protect Plaintiff's rights.

4.  There is no other adequate remedy available to Plaintiffs.

5.  Plaintiffs allege arbitrary and capricious actions by the federal defendants, reviewable under the Administrative Procedure Act, 5 U.S.C. Sec. 706(2).  A claim that a power has been exercised arbitrarily and capriciously is subject to judicial review and is not a mere political question.  *Powell v. McCormack,* 395 U.S. 486 (1969).

6.  Plaintiffs allege that federal funds and grants have been used in the establishment of the tribal court and law enforcement agencies, and in the implementation of law enforcement agreements with counties on the White Earth Reservation; this is an additional ground for federal question jurisdiction.  In the distribution of tribal funds and

other property under the supervision and control of the Federal

Government, the action of the tribe is subject to the supervisory

Authority of the Secretary of the Interior. *United States ex rel*

*West v. Hitchcock,* 205 U.S. 80; *Wilbur v. United States,* 281 U.S.

206.

### III. STANDING

7. Plaintiff can show a past and present, immediate impairment of

their rights as evidenced by a Solicitor's letter (U.S. Department of

the Interior) dated June 18, 1980, which stated in regard to the

establishment of tribal courts by the Reservation Business Committees,

"Where governmental action has the potential to affect people's lives,

in an intimate and drastic way, as child custody jurisdiction does,

the authority should be explicitly stated" (in the tribal constitution.)

Plaintiffs have suffered real and concrete harm in being deprived of

Prescriptive constitutional procedures adopted for their protection and

benefit in Article XV, "Manner of Review" of the Revised Constitution.

8. Plaintiffs have standing as there is a concrete justiciable controversy

under Article III of the Constitution of the United States of America

and it is prudent to resolve the issues raised by the Plaintiffs in

order that Plaintiffs do not continue to suffer direct impairment of

their rights. *Tileston v. Ullen,* 318 U.S. 44 (1943).

### IV. INTRODUCTION

9. Plaintiffs are citizens of the Anishinaabe Nation residing on the White

Earth Indian Reservation in north-central Minnesota, within the boundaries.

A portion of Becker County, Minnesota, is located within the White Earth

Indian Reservation.  Plaintiffs are also enrolled members of the White Earth

Band of Chippewa Indians which is presently a part of the consolidation

known and created by the United States Government as the Minnesota

Chippewa Tribe, organized under the Indian Reorganization Act of June 18,

1934, 48 Stat. 984, 25 U.S.C. 461 *et seq.*  The White Earth Indian Reservation

boundaries encompass nearly 800,000 acres, and has a total

enrollment of more than 20,000 members, with approximately 5000

living on the White Earth Indian Reservation.

10.  All enrolled members of the Minnesota Chippewa Tribe are granted

certain rights and privileges under the Constitution of the Minnesota

Chippewa Tribe adopted in 1963 as the Revised Constitution and Bylaws

of the Minnesota Chippewa Tribe, dated at Washington, D.C., on March 3,

1964 (hereinafter Revised Constitution).  Pursuant to Article XIII of the

Revised Constitution no member shall be denied any of the constitutional

rights or guarantees enjoyed by other citizens of the United States,

including, but not limited to, freedom of religion and conscience,

freedom of speech, the right to orderly association or assembly, and

*the right to petition for action or redress of grievances, and due process*

*of law*." (Emphasis added).


11.  The Revised Constitution sets forth the rights and privileges of

enrollees of the White Earth Band of the Minnesota Chippewa Tribe; Article XIII of the Revised Constitution provides that all members of the Minnesota Chippewa Tribe, of which the Plaintiffs are members, shall be accorded by governing body "equal rights, equal protection, and equal opportunities to participate in the economic resources and activities of the tribe. The six constituent bands of the Minnesota Chippewa Tribe all operate under Revised Constitution described above, or are supposed to by law. The Revised Constitution established a Tribal Executive Committee (hereinafter "TEC" and six Reservation Business Committees with limited powers for administration of the business of the tribe under Article V ("TEC" powers) and Article VI (powers of the Reservation Business Committees). The limited powers granted by the Revised Constitution to the TEC are set forth in Article V, and the limited powers granted to the Reservation Business Committees a/k/a "Tribal Council" are set forth in Article VI of the Revised Constitution (hereinafter "RBC"). The presently existing tribal government, the TEC and RBC, is one for specific business purposes only as created and organized under the 1934 Indian Reorganization Act

13. Defendant United States Department of the Interior is an agency of the United States; Defendant Bureau of Indian Affairs is a part of the Department of the Interior, mandated to manage the affairs and matters arising from the relations between the United States Government and the recognized tribes. Pursuant to Title 25 U.S.C. Section 2, the Secretary of the Interior is delegated the authority to manage said affairs and all matters

arising out the said relations with the recognized tribes.

14.  The plaintiffs are enrollees of the White Earth Band of Chippewa Indians of the Minnesota Chippewa Tribe and are beneficiaries of the "trust responsibility" vested in the United States Government through the Secretary of the Interior, and are, ostensibly at least, entitled by the Revised Constitution to the protections of the Federal Constitution, the Revised Constitution, and the Indian Civil Rights Act; the Defendants have the positive and mandatory duty to protect the rights of all the members of the White Earth Band of Chippewa Indians and the Minnesota Chippewa Tribe, including those of each of the plaintiffs.

15.  The organic governing document, the Revised Constitution, cannot be altered without following the prescriptive procedure of the amendment process in Article XII of the Revised Constitution; to date the Revised Constitution has not been amended by the tribal membership for the establishment of tribal courts, tribal law enforcement agencies, or for power and authority for the RBC to enter into cooperative agreements with the counties concerning law enforcement.  Yet, these and other violations of the Revised Constitution have taken place infringing upon the sovereign and constitutional rights of the membership, by exceeding the authority granted by the members in the Revised Constitution.

16.  Plaintiffs allege that the Indian Reorganization (Wheeler-Howard) Act of 1934, Public Law 73-383, 25 U.S.C. Sections 467-79 (1982) viewed "Indian" government as something granted by the federal government

at its discretion, qualifying the "right to self-government" as only that granted by the express legislation of Congress. The Revised Constitution was a boilerplate document written by the United States Government which did not act on inherent sovereign powers and granted only the few limited powers set out in the document and in 25 U.S.C. Section 476, and did not act on the wide range of inherent tribal powers that would be possible through a non-IRA constitutional revision.

17. The Secretary of Interior has a mandatory duty under Article XV of the Revised Constitution, "Manner of Review" to review and approve any resolution or ordinance enacted by the TEC and the Revised Constitution mandates that resolutions subject to review "*shall* be Presented to the Superintendent of officer in charge of the Reservation who *shall* within ten days after its receipt by him approve or disapprove the resolution or ordinance." (Emphasis on the legal term "shall" added.)

18. The five basic sources which the Secretary of the Interior has invoked in regard to its approval power over the present Indian Reorganization Act Revised Constitution are sections 2 and 9 of Title 25 of the United States Code vesting management of Indian Affairs in the (formerly) Commissioner of Indian Affairs, Section 16 of the Indian Reorganization Act of 1934 (commonly invoked at the beginning of many White Earth RBC resolutions), the general trust responsibility, the Supreme Court-established "guardian-ward" relationship, and the

powers of review and approval vested in the Secretary of the Interior

by the Minnesota Chippewa Tribe which adopted the Revised Constitution

pursuant to the Indian Reorganization Act.  Laws adopted by the tribe

or RBC's were by law not to take effect until reviewed and approved by

the Secretary of the Interior.  Revised Constitution, Article XV.

19.  Plaintiff allege the Defendants have abdicated their mandatory

responsibility for enforcement of the Revised Constitution, allowing

*ultra vires* resolutions to be promulgated with impunity by the TEC and

the RBC, neither Article XV of the Revised Constitution was followed

nor was consent of the membership through a constitutional amendment

obtained, as is more specifically pleaded and explained below.

Resolutions have been passed by which the TEC usurped the power

of interpretation of the Revised Constitution as sole interpreter; with

no provision in the Revised Constitution for such interpretations nor

with any consent of the membership.

20.  The general statements of purpose found in Article 1 of the Revised

Constitution, setting out the purposes of the Minnesota Chippewa Tribe,

and not found in either Article V, which delegates certain powers to the

TEC, nor in Article VI, which does the same for the RBC, is not an

effective delegation of powers to establish tribal courts or law enforcement

agencies, or to enter into cooperative law enforcement agreements with

the counties, or to declare the TEC shall have the power to be sole

interpreter of the Revised Constitution.  In order to find any effective

delegation of powers in the Revised Constitution, powers inherent in the tribal membership as a whole must be enumerated in the constitutional article or articles setting out the powers of the TEC and the RBC. Authority for this principle of prescriptive constitutional law can be found in *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408 (9th Cir. 1976).

21. No power can be asserted under the Revised Constitution in its present prescriptive and organic form unless it can be found in some express delegation of power in the articles setting out the powers of the Tribal Executive Committee and the Reservation Business Committees, as is proven by the best legal analysis on the issue contained in a July 31, 1986 memorandum of the United States Government, Officer of the Solicitor. In the memorandum of the Associate Solicitor, Division of Indian Affairs, Office of the Field Solicitor, United States Department of the Interior, signed by Tim Vollman as drafted by David Etheridge, addressed to the United States Government Assistant Secretary of Indian Affairs, dated July 31, 1986, it is stated that in analyzing Article VI vis-à-vis Article I of the Revised Constitution, *"It is simply unreasonable to conclude that the drafters of the constitution intended to give virtually unlimited authority to reservation business committees by authorizing them to make expenditures for reservation purposes, but then to proceed to provide several paragraphs detailing explicit authorities that would*

*clearly be subsumed under the categories 'promoting the general welfare' or 'maintaining justice'. Such a conclusion is especially untenable since the United States Supreme Court rejected such an approach with respect to the United States Constitution long before the Constitution of the Minnesota Chippewa Tribe was adopted. Jacobson v. Massachusetts, 197 U.S. 11, 22 (1905)."* (Emphasis added.)

22. That the Revised Constitution is a document of limited authority for business purposes only and designed only to meet the purposes of the Indian Reorganization Act of 1934 in its plan to establish tribal business entities, is further proven by a letter addressed to the Minnesota Chippewa Tribe, Incorporated dated May 23, 1973, from R.N. Winterer, Auditor, Sales and Use Tax Division, State of Minnesota, stating, *inter alia,* "It is our position that your organization is exempt from the Minnesota Sales and Use Tax <u>*as an agency or instrumentality of the United States Government*</u>." (Emphasis added.)

23. Plaintiffs allege the Revised Constitution as adopted is an organic act with limited powers granted to the TEC and RBC. The Revised Constitution is the supreme law of the tribe until and unless amended, revised, done away with, or otherwise changed by consent of the sovereign membership of the tribe. The membership is the true sovereign, and changes to the Revised Constitution must be authorized by the membership as a whole if any enumerated authorities or grants of power

are to be expanded. Proposed amendments would have to, by the
prescriptive procedure of the organic document, be submitted pursuant
to an amendment election requiring a majority vote of the qualified
members of the Minnesota Chippewa Tribe.

### V. Background of Previous BIA Enforcement and Review Concerning the Revised Constitution and Bylaws of the Minnesota Chippewa Tribe

24. In 1980, the White Earth Band of Chippewa Indians, one of the
constituent bands of the Minnesota Chippewa Tribe, submitted a petition
to reassume exclusive child custody jurisdiction under Section 108 of the
Indian Child Welfare Act of 1978 (25 U.S.C. Section 1918) and requested
that the Office of the Solicitor, U.S. Department of the Interior, review the
petition for conformity to the requirements contained in 25 C.F.R. Part 13.

25. The White Earth re-assumption petition cited Article 1, Section 3, of
the tribe's constitution as authority for the exercise of child custody
jurisdiction. That section reads: "The purpose and function of this
organization shall be to conserve and develop tribal resources and to
promote the conservation and development of individual Indian trust
property; to promote the general welfare of the members of the Tribe;
to preserve and maintain justice for its members and otherwise exercise
all powers granted and provided the Indians, and take advantage of the
privileges afforded by the Act of June 18, 1934 (48 Stat. 984) and acts
amendatory thereof or supplemental thereto, and all the purposes

expressed in the preamble hereof." Article 1, Section 3, Revised
Constitution and Bylaws of the Minnesota Chippewa Tribe. The
language reading "to preserve and maintain justice for its members"
was also used by the TEC in Resolution 2-80 (October 22, 23, 1980)
the resolution and extra-constitutional "constitutional interpretation"
usurping the rights of the sovereign people by the
establishment unconstitutional courts and agencies by TEC ukase and fiat.

26.    On September 30, 1980, a Memorandum was signed by the
Associate Solicitor – Indian Affairs, addressed to the Assistant Secretary,
Indian Affairs, advising that the Revised Constitution of the Minnesota
Chippewa Tribe does not authorize the constituent bands to exercise
child custody jurisdiction, and a letter dated October 20, 1980, from
Elmer T. Nitzschke addressed to the Field Solicitor, Twin Cities, advised
the same as the opinion of September 30, 1980. This opinion was sent
to the Legal Advisor of the Fond du Lac Band in Minnesota.

27.  The petition for re-assumption was not accepted because no power
had been delegated to the TEC or the RBCs by the membership "which
could even arguably support regulation of child custody" (Letter of
June 18, 1980, of Mariana Shulstad, for the Field Solicitor.)

28.  An opinion of July 31, 1986, from the Associate Solicitor- Indian
Affairs, declined to reverse the earlier opinions on the issue of the power
to authorize tribal courts to exercise Indian Child Welfare Act jurisdiction
(this opinion, while signed by Tim Vollman, who later became Regional

Solicitor in Tulsa, was drafted by David Etheridge, who later became

Assistant Solicitor, Branch of Lands and Minerals, in the Division of

Indian Affairs in Washington, D.C.).

29. That a letter dated December 21, 1990 from the Associate

Solicitor, Indian Affairs (William G. Lavell) to an Assistant Minnesota

Attorney General discussed all previous opinions on the issue and

Declined to overrule the previous analyses; making specific reference

To the July 31, 1986 opinion as the most exhaustive and authoritative

legal analysis.

30. That *Jacobson v. Massachusetts,* 197 U.S. 11 (1905), cited in the

1986 opinion described above, held that the spirit of the Constitution of

the United States or its preamble cannot be invoked, apart from the

words of that instrument, to invalidate a state statute, and that, although

the preamble indicates the general purposes for which the people ordained

and established the Constitution, the preamble has never been ordained

as the source of any substantive power conferred upon the Government of

the United States, or on any of its departments. Such powers embrace only

those expressly granted in the body of the Constitution, and such as may

implied from those so granted. Analogously, Plaintiffs allege that as to

to the Revised Constitution and Bylaws of the Minnesota Chippewa Tribe,

no power can be exerted unless it be found in some specific and express

delegation of power; and that the organic law, the Revised Constitution,

cannot be altered without following the constitutionally mandated

prescriptive procedures as to amendment and referendum contained in the Revised Constitution.

31. On August 16, 1994, the Associate Solicitor, Office of the Solicitor, U.S. Department of the Interior, alleging to having reviewed its prior opinions and opinions of the Field Solicitor's Office, United States Department of the Interior, regarding the authority of the Minnesota Chippewa Tribe to establish child welfare courts (notwithstanding those prior opinions had concluded that in adopting the tribal constitution the tribal membership had not vested authority in the Reservation Business Committees to establish tribal courts of general jurisdiction and that the Tribe's inherent authority to establish such courts was retained by the people) arbitrarily and capriciously deprived the membership of due process of law and deprived the membership of the amendment and referendum procedures in the Revised Constitution, by concluding a constitutional amendment would no longer be deemed necessary for the establishment of courts (Memorandum of Michael J. Anderson, August 16, 1994).

32. The action is arbitrary and capricious because the only reason given for disregarding the previous exhaustive analyses and opinions was that was his (the Associate Solicitor's) "belief" that the Department should give "great deference" to the "Tribe's) (*sic*) interpretation of its own constitution pursuant to the TEC's Resolutions 1-80 and 2-80, which were TEC "constitutional interpretations"; _while in fact and law there is no constitutional authority or grant in the Revised Constitution for_

*"constitutional interpretations."*

33. On May 31, 1994, the Chairman of the White Earth Reservation Business Committee wrote a letter to the Assistant Secretary of Indian Affairs, United States Department of the Interior, stating opposition to the unfavorable legal analyses that had issued from the Solicitor's offices concerning the necessity of an amendment to the tribal constitution in order for a legal tribal court system to be established.

34. On September 20, 1994, Ada E. Deer, Assistant Secretary – Indian Affairs, United States Department of the Interior, wrote a letter to Norman Deschampe, President of the Minnesota Chippewa Tribe; said letter was sent to Cass Lake, Minnesota. It informed them that in response to the letter of Darrell Wadena described in Paragraph 35 above, the Department of the Interior "has reviewed the prior opinions of the Office of the Solicitor and that of the Field Solicitor and concluded a constitutional amendment is not necessary to the establishment of tribal courts. Citing general principles of law, the Associate Solicitor – Indian Affairs indicated the Department should give deference to the Tribe's interpretation of its own constitution. Even greater weight will be given to a Tribe's interpretation that is a result of or subject to tribal constitutional safeguards and checks and balances." A copy of this letter is attached hereto and incorporated herein as "Exhibit 2". The letter went on to say that in light of this determination, a correction deleting Bois Forte from 25 CFR Sec. 11.100, Listing of Courts of Indian Offenses, had been prepared and would be published in the FEDERAL REGISTER.

35. That the letter written by Ada Deer for the Department of the

Interior nor the subsequent notice reversing the previous legal analyses

of the Solicitor's offices contained no new legal analysis constituting a

valid reason for change or reversal of the previous opinions and analyses,

and in facts no checks and balances or separation of branches of

government did exist at the time or presently in the Minnesota Chippewa

Tribe.

36.  Plaintiffs allege the letter of Ada Deer, the action of the Department of

the Interior, and the FEDERAL REGISTER notice were arbitrary and

capricious administrative action, in violation of the members' rights

to due process of law; and this action is still be used to pass resolutions

regarding the courts and law enforcement, making this action timely.

37.  In September of 1994 a notice was published in the FEDERAL

REGISTER stating that the unfavorable legal analyses of the Solicitor

General was reversed; however, it should be noted that the specific notice

related to recognition of the Bois Forte Band of the Minnesota Chippewa

Tribal court; and Bois Forte *had previously accomplished*

*retrocession for this purpose.*

### VI.  SHOWING OR PRESENTLY EXISTING ABDICATION OF RESPONSIBILITY TO ENFORCE AND REVIEW THE REVISED CONSTITUTION AND BY-LAWS OF THE MINNESOTA CHIPPEWA TRIBE; VIOLATION OF MANNER OF REVIEW IN THE REVISED CONSTITUTION (REASON FOR MANDUMUS TO ISSUE)

38.  Plaintiffs allege TEC constitutional interpretations 1-80 and

2-80 are extra-constitutional and that the Defendants abdicated and

avoided their mandatory duty of review in regard to 1-80, 2-80 and

subsequent "constitutional interpretations" to prevent the said

"interpretations" from being used as TEC ukase and arbitrary decrees

in violation of the member plaintiff's right to have the prescriptive

procedures of the Revised Constitution and federal law (Indian

Reorganization Act) enforced.

39.  Plaintiffs allege there are no provisions in the Revised Constitution

authorizing or granting the consent of tribal membership for TEC ukase

in issuing "constitutional interpretations".

40.  That the Ada Deer letter, described above, is in fact arbitrary and

capricious and an abdication of the Federal Government's duty to enforce

the "Manner of Review" provisions of the Revised Constitution, because in

fact the IRA system of reservation government is still existing law until or

unless done away with and there is at present no allocation of powers to

different branches of government and no separation of branches of

government or separation of political powers to act as a checks-and-

balance protection for the membership:  the intent of the IRA was to

establish limited-power tribal governments to manage resources and

conduct business, not to act in a national capacity.

41.  That resolutions passed in 2004, and priors,  by the RBC relating to

law enforcement agreements with the counties are subject to the "Manner

of Review" section of the Revised Constitution and have not been

authorized by Congress nor subjected to mandatory review by the

Department of the Interior for constitutionality under the Revised

Constitution nor for review as to whether referendum of the resolutions

is necessary for the purpose of obtaining the consent of tribal membership.

42. That a colorable federal claim exists for the United States District Court to issue a Writ of Mandamus upon because the claim is not wholly based upon the Revised Constitution or but arises under the laws of the United States – Section 16 of the Indian Reorganization Act and the Indian Civil Rights Act as amended; and the claims arise under the Constitution of the United States of America in regard to the violations of due process of law the plaintiff have been subjected to by abdication of the responsibility of the United States to enforce the "Manner of Review" in the Revised Constitution.

### VII. USURPATION OF THE DEMOCRATIC PREROGATIVES, NORMS OF DEMOCRACY AND INHERENT SOVEREIGNTY OF THE PEOPLE BY FEDERAL GOVERNMENT DEFERENCE TO RBC AND TEC UKASE

43. That the authority of the Revised Constitution as the organic governing document of the Minnesota Chippewa Tribe derives from the consent of its adopters, the membership of the Minnesota Chippewa Tribe, as evidenced by the "Certification of Adoption" dated March 3, 1964, after the Revised Constitution was duly submitted for ratification to the qualified voters of the reservations, and was on November 23, 1963, duly adopted by a vote of 1,761 for, and 1,295 against, in an election in which at least 30 percent of those entitled to vote cast their ballots in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378).

44. That the members therefore adopted a constitution and by-laws by which the Minnesota Chippewa Tribe should be governed; granting the RBC's and the TEC a limited fund of powers for business purposes.

45. That the powers granted to the RBC's and TEC are qualified by the Revised Constitution in that resolutions and ordinances subject to review must be reviewed and approved or disapproved by the Secretary of the Interior.

46. That the membership is deprived of the procedure for referendum in the Revised Constitution if the the prescriptive use of the "Manner of Review" section is not strictly adhered to by the Secretary of the Interior and the Bureau of Indian Affairs.

47. Extra-constitutional ukase in the form of constitutional interpretations and resolutions which have been implemented in violation of the "Manner of Review" give rise to colorable federal claim for relief in the nature of mandamus, and the Secretary of the Interior and Bureau of Indian Affairs should be ordered to perform an audit of, and review of, actions of the RBC's,and TEC that violate, or may violate, the prescriptive procedures of the Revised Constitution.

## VIII. A PROPOSAL TO HAVE A SECRETARIAL ELECTION WHETHER THE "MANNER OF REVIEW" SECTION SHOULD BE REMOVED FROM THE REVISED CONSTITUTION WAS NOT ACTED UPON AFTER A SHOWING OF THE SOVEREIGN WILL OF THE PEOPLE

48. Plaintiffs allege that in September of 2001 the Minnesota Chippewa Tribe sent out an informational newsletter to all members entitled "Reforming the Minnesota Chippewa Tribe Constitution: Encouraging Memberhip (*sic)* to Share in the Process" proposing whether a Secretarial Election should be conducted removing, along with some other proposed language, the "Manner of Review" in Article XV of the Revised Constitution.

49. After receiving comment and input from Tribal members at a meeting for such purpose held on the Mille Lacs Reservation shortly after the said informational newsletter was sent, plans were abandoned to try to remove the "Manner of Review" Section.

50. The "Manner of Review" in the Revised Constitution is one of the few protections resembling any checks and balances for the benefit of tribal members (along with referendum) and should be strictly enforced by the Secretary of Interior and the Bureau of Indian Affairs, and should issue from this Court for such purpose.

51. Mandamus is appropriate because the "Manner of Review" section specifically uses the word "shall" in stating any resolution or ordinance subject to review under the Revised Constitution "shall be presented to the Superintendent or officer in charge of the Reservation" for action within ten (10) days; if the said Superintendent or officer does approve a mandatory procedure for submittal to the Secretary of the Interior is prescribed. The word "shall is used again" in Section 2 of Article XV, "Manner of Review" which states, "Any resolution or ordinance enacted by the Reservation Business Committee, which by the terms of this Constitution and Bylaws is subject to review by the Secretary of the Interior or his authorized representative, shall be governed by the procedures set forth in Section 1 of this Article."

52. The word "shall", upon which this action for relief in the form of mandamus relies, is also used in Section 3 and final paragraph of Article XV of the Revised Constitution as to the prescriptive procedures to be followed therein.

53.  Plaintiffs allege the "Manner of Review" has not been enforced by the Defendants and mandamus should issue that the section be enforced both retroactively, presently, and for the future as long as the Revised Constitution remains in its present form as supreme tribal law.

WHEREFORE, the Plaintiffs request relief in the form of Mandamus as follows:

1.    That a Writ of Mandamus issue to declare that the Manner of Review in the Revised Constitution be implemented immediately for the Bureau of Indian Affairs and the Secretary of the Interior to review the tribal constitutionality of the so-called "constitutional interpretations" 1-80 and 2-80 of the TEC and that they be ordered rescinded if not within the constitutional powers allowed.

2.    That a Writ of Mandamus issue to the Bureau of Indian Affairs and the Secretary of the Interior to review the "Ada E. Deer" letter of September 20, 1994 and for findings as to whether it was arbitrary capricious and promulgated without sufficient legal analysis as to to the powers and authorities in the Revised Constitution.

3.    That recent resolutions of the White Earth Reservation Business Committee aka Tribal Council be ordered to be reviewed pursuant to the Revised Constitution and immediate action be ordered by the Bureau of Indian Affairs and Secretary of the Interior to have the resolutions rescinded if disapproved as unconstitutional under the Revised Constitution and federal law.

4.    That a complete audit be ordered to be conducted by the Bureau of Indian Affairs and Secretary of the Interior of all resolutions of the MCT RBC's, the TEC, and constitutional interpretations of the TEC that should have been subject to Manner of Review and were not so reviewed pursuant to the mandate of the Revised Constitution, beginning with TEC "Constitutional Interpretation" 1-80 up to the present time.

5.    For all further relief as necessary to implement a Writ of Mandamus in the circumstances, including any injunctive relief necessary.

6. For attorney fees and costs of the action, in favor of the Plaintiffs, pursuant to the Equal Access to Justice Act and Section 1983, 42 U.S.C. Sec. 1983 and all other applicable attorneys' fees provisions.

Date:   April 15, 2005

John William Parker
39744 400th Avenue
Waubun, Minnesota 56589
(218) 734-2497

Todd Allen Bellanger
224 Loop
White Earth, MN 56591
(218) 983-4172

Melvin Manypenny
White Earth, MN 56591
(218) 983-3160

Plaintiffs Pro Se